UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| TERRI SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 13-02-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM** |
| DAN FLINKFELT, et al., | ) | **OPINION** |
| | ) | **&** |
| Defendant. | ) | **ORDER** |
| | ) | |
| | ) | |

**\*\*\*\*    \*\*\*\*    \*\*\*\*    \*\*\*\***

Defendants, Henry County Animal Control, Henry County Fiscal Court and Dan
Flinkfelt, in his official and individual capacities, seek summary judgment dismissing the
claims of the Plaintiff, Terri Smith. [R. 5.] Smith responds to the motion for summary
judgment, with very little argument for the Court to consider, discussed *infra* section IIC. [R.
7.] For the following reasons, the Defendants' motion will be GRANTED.

# I

Smith, is a resident of Henry County, Kentucky. In December of 2011, Flinkfelt, in
his capacity as a senior officer for Henry County Animal Control, and in response to reports
of animal cruelty, searched the property of Terri Smith and her deceased husband, Kenneth
Smith. [R. 1-2 at 3; R. 5-3, *Affidavit of Flinkfelt.*] Based on his observations, Flinkfelt, with
help from a group of Henry County employees and volunteers, removed approximately 200
animals from Smith's property. [R. 5-3, *Affidavit of Flinkfelt.*] The Smiths were

subsequently charged with over 200 counts of animal cruelty.  [R. 5-1 at 4; R. 5-3, *Affidavit of Flinkfelt.*]

The United States Marshal's Office arrested Mrs. Smith in Bullitt County, Kentucky and Mr. Smith in LaGrange, Kentucky.  [R. 5-1 at 4.]  Mr. Smith committed suicide prior to the adjudication of the charges against him.  Mrs. Smith was permitted to plead guilty to only one count of animal cruelty in the second degree.  [R. 5-1 at 4; R. 5-3 at 2, *Affidavit of Flinkfelt.*]  As a part of the plea agreement, she was sentenced to 365 days in jail, ordered to pay the Commonwealth of Kentucky $9,467.17 in restitution and forfeited all of her animals to the Commonwealth.  [R. 5-1 at 4; R. 5-11, *Teri Smith v. Commonwealth of Ky., Guilty Plea.*]

Subsequent to her guilty plea, Smith appealed two Orders of the Henry District Court to the Henry County Circuit Court, both of which were affirmed.  [R. 5-13, *Teri Smith v. Commonwealth of Ky., Order.*]  Specifically, her appeal argued that the District Court erred by "(1) failing to require Henry County Animal Control to sell the animals seized from Plaintiff for their "fair market value;" and, (2) failing to give Terri Smith credit toward her restitution obligation for amounts received by Henry County Animal Control that were allegedly donated for the care of the animals seized."  [R. 5-1 at 5 (citing R. 5-12, *Teri Smith v. Commonwealth of Ky., Statement of Appeal*).]  The animals forfeited by Smith were adopted or sold, raising $4,000 that was applied to the restitution she owed the Commonwealth.  [R. 5-1 at 5; R. 5-14, *Teri Smith v. Commonwealth of Ky., Counterstatement of Appeal.*]

On December 11, 2012, Smith filed two actions in Henry County Circuit Court, which were both removed to this Court on January 2, 2013.  [R. 1.]  In the first case, Smith,

individually and as Administratrix of her husband's estate, filed suit against all the same Defendants as in the present action.[1]  The Court granted summary judgment in that case. *Smith v. Flinkfelt*, CIV. 13-01-GFVT, 2013 WL 5467618 (E.D. Ky. Sept. 30, 2013).  In Smith's second suit, presently before this Court, Smith sues on her own behalf.

Smith's complaint is far from clearly plead.  The Defendants identify five causes of action and eleven claims to which they respond.  [R. 1-2; R. 5-1 at 1-2.]  The identified claims include a Fourth Amendment violation due to unlawful arrest, Fifth Amendment Wrongful Takings/Equal Protection claims, Excessive Fines claims under the Eight Amendment, Fourteenth Amendment Due Process/Equal Protection claims, claims under Section 10 of the Kentucky Constitution, state law claims for the intentional infliction of emotional distress and/or the tort of outrage, defamation, negligence, negligent hiring, training, and/or supervision, negligence and negligent entrustment.  [*Id.*]  The Court has studied the complaint and believes that this inventory of claims is generous, and fairly based on a liberal reading of the complaint.  Because Smith did not object to the Defendants' framing of claims in this way, and the Court believes that this generous reading is fair to Smith, the Court will proceed under this framework.

---

[1] In *Smith v. Flinkfelt, et al.*, 13-CV-01-GFVT, the Administratrix (Plaintiff here) sought damages both in her role as Administratrix, and individually, under 42 U.S.C. §1983 for the alleged deprivation of her husband's constitutional rights, for defamation, loss of consortium and for the infliction of emotional distress.  See *Smith v. Flinkfelt*, CIV. 13-01-GFVT, 2013 WL 5467618 (E.D. Ky. Sept. 30, 2013).

## II

## A

Because Defendants' instant motion for summary judgment comes in the early stages of this litigation, Smith argues that it should be considered under the 12(b)(6) motion to dismiss standard. [R. 7.] The Court again rejects this argument.[2]

There is no prohibition against a party submitting a motion for summary judgment before any discovery has been conducted. Rule 56(b) of the Federal Rules of Civil Procedure provides that "[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed.R.Civ.P. 56(b). In *Short v. Oaks Correctional Facility*, 129 Fed. App'x 278 (6th Cir. 2005) (unpublished), the Sixth Circuit Court of Appeals affirmed a trial court's decision to grant summary judgment prior to the taking of any discovery. There, the defendants filed motions for dismissal and summary judgment on sovereign and qualified immunity grounds. *Id.* at 279. The plaintiff objected to the motions arguing that they were premature and that she deserved an opportunity to conduct discovery prior to any rulings. *Id.* at 280. Notwithstanding her objections, she failed to submit additional motions or file an affidavit explaining her need for additional discovery. *Id.* The trial court entered summary judgment for the defendants. *Id.*

On appeal, the plaintiff argued that the district court abused its discretion by granting summary judgment without permitting an opportunity for discovery. *Id.* The court noted in

---

[2] The Court considered this same argument about whether the dismissal or summary judgment standard was appropriate, in the factually related case of *Smith v. Flinkfelt*, CIV. 13-01-GFVT, 2013 WL 5467618 (E.D. Ky. Sept. 30, 2013). While the case is factually similar and similarly postured, the parties advance different arguments in the two proceedings. See FN 1.

its opinion that Rule 56(f) "provides a mechanism for a plaintiff and the courts to give effect to the well-established principle that 'the plaintiff must receive 'a full opportunity to conduct discovery' to be able to successfully defeat a motion for summary judgment.' " *Id.* at 281 (quoting *Ball v. Union Carbide Corp.*, 385 F.3d 714, 719 (6th Cir. 2004) (internal citations omitted)). The court also emphasized the importance of avoiding cursory requests for more discovery. It noted that "a plaintiff opposing a motion for summary judgment cannot simply argue that it needs more discovery-instead, the plaintiff must file a Rule 56(f) affidavit or a motion that indicates to the district court" what material evidence it seeks to uncover "by the additional discovery requested." *Id.* Based on the facts and review of prior case law, the court concluded the following:

> we find that the district court did not abuse its discretion in ruling on the motions for summary judgment without permitting [plaintiff] to engage in discovery. The [plaintiff] did not file an affidavit or motion asking for additional discovery,[] and while her response did generally indicate her need for discovery and why discovery had not yet taken place, it did not "state how any discovery would have shed further light on the issue" of deliberate indifference. *Ball*, 385 F.3d at 721. In the face of the motions for summary judgment-which were supported by affidavits and other evidentiary documentation-the [plaintiff] was required to come forward with more than a general and conclusory statement regarding the need for discovery.

*Id.* at 282. The court also opined that the district court's decision to rule on the summary judgment motions without the taking of any discovery was "further justified . . . because the motions raised the threshold issue of qualified immunity." *Id.* at 283.

The circumstances encountered here are identical to those present in *Short*. The motion for summary judgment was filed prior to the taking of any discovery; the Defendants have raised sovereign and qualified official immunity as threshold questions; and Smith has failed to raise anything more than a cursory request for discovery. [R. 5-1; R. 7.] Based on that court's rulings, review of the instant motion under the summary judgment standard is

proper. After all, "questions of qualified immunity should be resolved 'at the earliest possible stage in litigation' or else 'the driving force' behind immunity – avoiding unwarranted discovery and other litigation costs – will be defeated." *Everson v. Leis*, 556 F.3d 484, 492 (6th Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. 223 (2009)).

**B**

Summary judgment is appropriate where "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.' " *Olinger v. Corp. of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate there is a genuine issue. *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S.

6

at 324). Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted).

Finally, the trial court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact," and "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). In applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Liberty Lobby*, 477 U.S. at 255).

## C

In certain circumstances, when a party completely ignores or fails to address an issue, then the Court is justified in deeming the argument or claim abandoned. The Sixth Circuit does not pull punches in describing when parties are deemed to have abandoned claims, or how District Courts should deal with the issue:

> This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment. *See Hicks v. Concorde Career Coll.,* 449 F. App'x 484, 487 (6th Cir.2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in a response to a motion for summary judgment); *Clark v. City of Dublin,* 178 F. App'x 522, 524–25 (6th Cir.2006) (recognizing that the failure to respond properly to motion for summary judgment arguments constitutes abandonment of a claim); *Conner v. Hardee's Food Sys.,* 65 F. App'x 19, 24–25 (6th Cir.2003); *see also Colston v. Cleveland Pub. Library,* No. 1:12–CV–204, 2012 WL 3309663, at *2 n. 2 (N.D.Ohio Aug.13, 2013) (deeming a claim abandoned and granting summary judgment when a plaintiff "did not respond or even mention [the] claim in her opposition to Defendants' motions for summary judgment").

*Brown v. VHS of Michigan, Inc.*, 13-1054, 2013 WL 5583818 (6th Cir. Oct. 10, 2013). A line of cases in the Eastern District has come to the same conclusion. See *Knittel v. First Fin. Mortgage Corp.*, CIV.A. 08-44-JBC, 2009 WL 1702174 (E.D. Ky. June 17, 2009) ("By failing to respond specifically to Citimortgage's arguments on those claims, the plaintiffs have abandoned them, and the court will grant summary judgment to Citimortgage.") (citing *National Information and Communications Equipment Network, Inc. v. Willigan,* No. 06-28-DLB, 2007 WL 2979928, at *10 (E.D.Ky. Oct.11, 2007) (additional citations omitted)).

Defendants' motion for summary judgment is thirty-three pages in length and thorough, providing the Court with multiple reasons why each of Smith's claims fail. [R. 5-1.] Smith's seven-page response was generally dismissive of the underlying motion for summary judgment but provides almost no legal analysis or argument. [R. 7.] The response contains a three-page, bulleted list of the factual allegations made in the original complaint and two pages of "argument." [Id.] Smith justifies the non-response by explaining that "Plaintiff does not feel the need to take up this Court's time by repeating her arguments made in the companion case." [*Id.* (referring to *Smith v. Flinkfelt, et al.*, 13-CV-01-GFVT).] While the Court acknowledges that the facts underlying the two cases are related, these cases are not consolidated nor are the arguments the same. [R. 8 at 5.] They are distinct cases with unique complaints that advance completely different claims. *See* FN 2, *supra*. Furthermore, they are attacked by different motions for summary judgment, which argue different legal theories.

The Henry County Defendants provide a list of the arguments that they presented in their motion and that Smith failed to address in her Response:

> (1) Plaintiff's Complaint failed to satisfy the minimum pleading requirement; (2) Plaintiff's claims are barred by the *Rooker-Feldman* and/or the *Heck* doctrines; (3) Defendant Flinkfelt did not seize Plaintiff as is contemplated or protected by the

Fourth Amendment; (4) Plaintiff voluntarily forfeited all of her property interests in all of the subject animals and Defendants therefore did not unreasonably seize Plaintiff's property in violation of the Fourth Amendment; (5) Plaintiff has failed to plead the inadequacy of the state's inverse condemnation proceeding, precluding her Fifth Amendment claim; (6) Plaintiff's Eighth Amendment Excessive Fines claim fails because the animals she knowingly and voluntarily forfeited in conjunction with her guilty plea, and the value Defendants obtained for said animals and credited to Plaintiff's restitution obligation, without more, fails to establish a violation of the Eighth Amendment's prohibition against excessive fines; (7) Plaintiff has failed to plead the inadequacy of her post-deprivation remedies, therefore precluding her Fourteenth Amendment Due Process claim; (8) Plaintiff has not and cannot point to any similarly situated individuals who were treated any differently than Plaintiff, thereby precluding her Equal Protection claim; (9) Plaintiff has failed to point this Court to any vehicle by which Plaintiff may redress her alleged grievance under the Tenth Section of the Kentucky Constitution; (10) all claims against Defendants, Flinkfelt in his official capacity, Henry County Animal Control and Henry County Fiscal Court are duplicative as they are all properly construed as claims against the singular, real party in interest, Henry County; and (11) Henry County is immune from Plaintiff's state law claims. [DN 7].

[R. 8 at 4-5.] By not responding, Smith has left the Court with no legal arguments to consider on her behalf for many of the issues raised in the Defendants' very substantial motion for summary judgment. The Henry County Defendants do concede that two issues are arguably raised in Smith's response: Flinkfelt's claim of qualified immunity and whether Smith had demonstrated a policy or custom that would support a finding of liability as to Henry County. [R. 8 (referring to R. 7).] Even these arguments, however, are addressed in a summary fashion. The truth is that Smith has failed to present arguments in support of the vast majority of her claims.

The Henry County Defendants argue that Smith's claims should be dismissed as they are textbook examples of perfunctory claims, unsupported by argument. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d

989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n,* 59 F.3d 284, 293–94 (1st Cir.1995)). In addition to the aforementioned rules regarding abandonment and perfunctory claims, the Court also considers the summary judgment precept that the trial court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact," and that "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). When these rules are considered together, the case is strong for dismissing the uncontested arguments outright. Nevertheless, while the Court believes that it is justified in granting the Defendants' motion with regard to the uncontested issues, solely on the basis of Smith's failure to respond to these arguments, this is ultimately unnecessary because the claims still fail, even if the Court does not deem the arguments abandoned.

## D

Smith believes that she was deprived of constitutionally protected rights and seeks redress pursuant to 42 U.S.C. § 1983. Importantly, section 1983 does not create substantive rights but, rather, "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States...." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 924 (1982); *Mertik v. Blalock*, 983 F.2d 1353, 1359 (6th Cir. 1993). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510

U.S. 266, 271 (1994) (citing *Graham v. Connor,* 490 U.S. 386, 394 (1989) (additional citations omitted)).

Smith alleges that Henry County and Flinkfelt violated her rights under the Fourth, Fifth, Eight and Fourteenth Amendments of the United States Constitution. Succinctly, Smith alleges that Henry County and Flinkfelt acted unreasonably in seizing her animals, had a duty to care for the animals they seized, should have consulted with her regarding the values of the animals and were obligated to dispose of those animals so as to receive the animals' maximum value. As a result of this behavior, Smith believes that she was deprived of her constitutional rights and now seeks relief pursuant to 42 U.S.C. §1983. [R. 1-2.]

**1**

Claims asserted against Henry County Animal Control and Flinkfelt, in his official capacity, will be dismissed. "[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). This is because "a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Graham*, 473 U.S. at 166. Suit against Flinkfelt, in his official capacity, is nothing more than a suit against Henry County, an entity already defending the suit, and thus the Court deems it appropriate to dismiss all federal "official capacity" claims against Flinkfelt on redundancy grounds. *See Lambert v. Hartman*, 517 F.3d 433, 439-40 (2008) ("[Plaintiff] sued the Clerk in his official capacity, which is the equivalent of suing the Clerk's employer, the County").

Dismissal of any claim against Henry County Animal Control is also appropriate because it is a subdivision of Henry County. *See Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir.

2002) ("The McCracken County jail is not a legal entity susceptible to suit. Because the McCracken County Jail is a department of the county, the county is the appropriate party to address [the plaintiff's] suit."); *see also Taylor v. Adams*, No. 5:11-CV-P164-R, 2011 WL 6415499, at *2 (W.D. Ky. Dec. 21, 2011).

### 2

Defendants argues that the *Rooker-Feldman* doctrine prohibits this Court from considering Smith's constitutional claims as they primarily relate to Smith's dissatisfaction with the execution of her plea agreement, particularly as is relates to the Defendants' alleged failure to receive "maximum value" for the confiscated animals. [R. 5-1 at 8.] "The *Rooker–Feldman* doctrine bars lower federal courts from conducting appellate review of final state-court judgments because 28 U.S.C. § 1257 vests sole jurisdiction to review such claims in the Supreme Court." *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 291 (2005)). This rule gives effect to the principle that "[a] party raising a federal question must appeal a state court decision through the state system and then directly to the Supreme Court of the United States." *United States v. Owens*, 54 F.3d 271, 274 (6th Cir. 1995) (citing *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923)). This doctrine "applies only where a state-court loser initiates an action in federal district court, complaining of injury caused by a state court judgment, and seeks review and rejection of that judgment." *Id.* (citing *In re Cook,* 551 F.3d 542, 548 (6th Cir. 2009)). The Sixth Circuit teaches that the Court must look to the "source of the injury" alleged in the complaint to properly determine whether Rooker-Feldman applies. *Berry v. Schmitt*, 688 F.3d 290, 299 (6th Cir. 2012); (citing *Evans v. Cordray,* 424 Fed.Appx. 537, 538 (6th Cir. 2011) (quoting

*McCormick v. Braverman,* 451 F.3d 382, 393 (6th Cir. 2006)).  "If the source of the injury is the state court decision, then the *Rooker–Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury ... then the plaintiff asserts an independent claim."  *Berry v. Schmitt*, 688 F.3d 290, 299 (6th Cir. 2012) (quoting *McCormick,* 451 F.3d at 393.)  Smith did not address the application of this doctrine in her response.  [R. 7.]

     As described earlier, *supra* I, Smith plead guilty in state court to only one count of animal cruelty in the second degree.  [R. 5-11, *Teri Smith v. Commonwealth of Ky., Guilty Plea.*]  She was sentenced to 365 days in jail, ordered to pay the Commonwealth of Kentucky $9,467.17 in restitution and forfeited all of her animals to the Commonwealth. [R. 5-11, *Teri Smith v. Commonwealth of Ky., Guilty Plea.*]  Post-conviction, Smith appealed the Henry District Court decision to the Henry Circuit Court where she argued that the District Court had erred by "(1) failing to require Henry County Animal Control to sell the animals seized from Plaintiff for their "fair market value;" and, (2) failing to give Terri Smith credit toward her restitution obligation for amounts received by Henry County Animal Control that were allegedly donated for the care of the animals seized."  [R. 5-1 at 5.]  These are the same issues being argued by Smith in her Complaint.  [R. 1-2 at 7.]  The source of Smith's alleged injury is rooted in how the state court interpreted and executed the terms of her plea agreement.  As such, the *Rooker–Feldman* doctrine bars this Court from considering these issues and so the claims must be dismissed.

     While Smith only uses the words "Fourth Amendment" one time in her complaint, she also appears to allege that her Fourth Amendment rights were violated as a result of an unlawful arrest.  In her third cause of action, Smith argues that Henry County had a "duty to

hire and properly train and supervise its animal control officer and animal control personnel to prevent unlawful arrests." [R. 1-2 at 10.] She goes on to say that Henry County's failure to hire, train and supervise its employees to prevent unlawful arrests was wrongful. [*Id.*] Noticeably lacking, however, is the allegation that there was an underlying unlawful arrest. Despite this shortcoming, the Court assumes Smith is suggesting that her own arrest was unlawful. Smith is similarly barred from making this complaint in Federal Court by the *Rooker-Feldman* doctrine. Even assuming argundeo that Smith was arrested unlawfully, any relief that this Court provides would necessarily undermine the state court's conviction. Again, the proper venue for this appeal is through the state courts.

Plaintiff is also estopped from making these constitutional arguments by the holding of the Supreme Court in *Heck v. Humphrey*:

> …to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

512 U.S. 477, 486-87 (1994). This rule "ensures that habeas corpus remains the exclusive remedy for criminal defendants who have not obtained a favorable termination in their criminal proceedings and does not allow duplicative, collateral attack of convictions or sentences through § 1983 actions." *S.E. v. Grant Cnty. Bd. of Educ.*, 544 F.3d 633, 637 (6th Cir. 2008) (citing *Shamaeizadeh v. Cunigan,* 182 F.3d 391, 394–95 (6th Cir.1999)). The *Heck* Court goes on to explain how a Court should evaluate whether the Plaintiff is permitted to bring a §1983 action:

> …when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Smith has not made any suggestion that her conviction or sentence in state court has been invalidated. To the contrary, when considering Smith's appeals regarding the imposition of her sentence, the Henry Circuit Court affirmed the District Court's earlier decision. Therefore, any claims that Smith intends to litigate in Federal Court about the constitutionality of her underlying state court conviction are also appropriately dismissed pursuant to the *Heck* rule.

## E

Smith advances state law claims for the torts of outrage/intentional infliction of emotional distress,[3] defamation, negligence, negligent hiring, training, and/or supervision and for negligent entrustment. [R. 1-2; R. 5-1 at 2.] District Courts may "decline to exercise supplemental jurisdiction over a claim" after "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. §1367(c)3. As the Court has dismissed all claims that present a federal question, whether to maintain supplemental jurisdiction over these State claims is discretionary.

In determining whether to "retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.' " *Gamel v. City of Cincinnati*, 625 F.3d 949, 951-52 (6th

---

[3] The Court notes that "[t]he tort-of-outrage and intentional-infliction-of-emotional-distress claims are the same." *Green v. Floyd Cnty., Ky.*, 803 F. Supp. 2d 652, 655 at FN1 (E.D. Ky. 2011) (quoting *See Bennett v. Malcomb,* 320 S.W.3d 136, 137 (Ky.App.2010)).

Cir. 2010) (citing *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988)). Furthermore, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Gamel v. City of Cincinnati,* 625 F.3d 949, 952 (6th Cir. 2010) (quoting *Musson Theatrical, Inc. v. Fed. Exp. Corp.,* 89 F.3d 1244, 1254–1255 (6th Cir. 1996)). In this instance the claims may be resolved expeditiously. In the interest of both judicial economy and convenience they will be addressed at present. Because Henry County and Flinkfelt, in his official and individual capacity, are shielded from suit by state sovereign and qualified immunity, these claims fail as a matter of law.

## 1

When assessing whether defendants are entitled to immunity from state law tort liability, the Court must apply Kentucky rules of sovereign immunity. *See Funke v. Coogle*, No. 3:11-CV-310-H, 2013 WL 209602 (W.D. Ky. 2013) (citing *King v. Taylor*, 694 F.3d 650, 662-64 (6th Cir. 2012)). "A county government is cloaked with sovereign immunity." *Schwindel v. Meade County*, 113 S.W.3d 159, 163 (Ky. 2003); *see also Doe v. Patton*, 381 F. Supp.2d 595, 602 (E.D. Ky. 2005) ("County governments in Kentucky are cloaked in sovereign immunity, unless such immunity is expressly waived"). In addition, a county cannot "be held vicariously liable in a judicial court for the ministerial acts of its agents, servants, and employees." *Schwindel*, 113 S.W.3d at 163. As it relates to individuals sued in their official capacities, they are "cloaked with the same immunity as the government or agency [they] represent." *Id*. at 169 (citing *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001).

The Supreme Court of Kentucky has noted that it will find "waiver only where stated 'by the most express language or by such overwhelming implications from the text as [will]

leave no room for any other reasonable construction.' " *Department of Corrections v. Furr,* 23 S.W.3d 615, 616 (Ky.2000) (quoting *Withers v. University of Kentucky,* 939 S.W.2d 340, 346 (Ky.1990) (internal citation omitted)). Unless Henry County and Flinkfelt waived their right to sovereign immunity, they are shielded from Smith's state law claims. *See Doe*, 381 F.Supp.2d at 602.

Smith has failed to produce any evidence that either Henry County or Flinkfelt waived their governmental immunity. Moreover, the cases from this circuit establish that sovereign immunity protects Henry County and Flinkfelt, in his official capacity, from Smith's claims. *Criswell v. Wayne County, Ky.,* 165 F.3d 26 (Table), 1998 WL 598739, at *7 (6th Cir. 1998) (recognizing that absent a waiver, actions against counties and county officials in Kentucky fail because both are entitled to sovereign immunity); *Howard ex rel. Estate of Howard v. Bayes*, 378 F.Supp.2d 753, 762 (E.D. Ky. 2005) (holding that state sovereign immunity "protects Sheriff Montgomery, in his official capacity, and Magoffin County" from a "state law claim of wrongful death"); *see also Smith v. City of Corbin*, CIV. 11-99-GFVT, 2013 WL 139726, at *17 (E.D. Ky. Jan. 10, 2013) (this Court noting that Kentucky case law has not abrogated counties' rights to assert "sovereign immunity for intentional infliction of emotional distress claims"); *Webb v. Jessamine County Fiscal Court*, No. 5:09-cv-314-JMH, 2011 WL 3444091, at *2 (E.D. Ky. August 8, 2011) (the Court ruling that the defendant, "in his official capacity, enjoys immunity from [p]laintiff's state law claims of negligence and intentional infliction of emotional distress"); *see also Mellencamp v. Louisville/Jefferson Cnty. Metro Gov't*, 2009 WL 1034216, at *6 (W.D. Ky. Apr. 16, 2009) (explaining that claims for assault, battery, intentional infliction of emotional distress, negligence, and gross

negligence cannot be brought against the county because of state immunity).  Hence, the state law claims against Henry County and Flinkfelt, in his official capacity, fail.

**2**

Smith also sued Flinkfelt, in his individual capacity, on the state law claims of intentional infliction of emotional distress, defamation and, in the most perfunctory fashion, negligence and/or negligent entrustment.  These claims also fail because Flinkfelt, in his individual capacity, is entitled to qualified official immunity.

Officers or employees of county government enjoy the same immunity privileges that the county enjoys, but "when sued in their individual capacities, public officers and employees enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment." *Yanero*, 65 S.W.3d at 522.  Under Kentucky law, "[qualified] official immunity is 'immunity from tort liability afforded to public officers and employees for acts performed in the exercise of their discretionary functions.' " *Lewis v. Meyers*, 2010 WL 3829200, at *3 (W.D. Ky. Sept. 24, 2010) (quoting *Yanero*, 65 S.W.3d at 521).  Qualified official immunity is applicable to " 'the negligent performance by a public officer or employee of (1) discretionary acts or functions, i.e., those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment, (2) in good faith, and (3) within the scope of the employee's authority.' " *Id.* (quoting *Yanero*, 65 S.W.3d at 522).

It is important to identify the allegedly unlawful behavior of Flinkfelt.  First, Smith alleges that the "actions of Dan Flinkfelt constitute intentional infliction of emotional distress."  [R. 1-2 at 11.]  Smith does not clearly identify the specific, deliberate act that caused her emotional distress.  The court speculates, however, that Smith is referring

18

generally to Flinkfelt's decision to remove the animals, pursue charges of animal cruelty against Smith, his remarks to the media and the subsequent sale of the animals at what Smith considers unreasonable prices. Second, Smith alleges that the Henry County and Flinkfelt "failed to implement appropriate policies and procedures to prevent unnecessary inflammatory statements and incorrect statements being issued to the press and in public." [R. 1-2 at 12.] Smith does not specifically identify what statements were defamatory but, rather, argues that "Flinkfelt knew or should have known of the harassment, embarrassment, and humiliation to which individuals such as the Plaintiff would be subjected as a result of charging and arresting on the charges of cruelty to animals and to charges of running a puppy mill." [R. 1-2 at 11.] Finally, throughout Smith's complaint she alleges that Flinkfelt was negligent in the carrying out of his duties. For example, Smith argues "Flinkfelt negligently allowed and entrusted Chad Zimmerman and other employees and volunteers…to remove and take Plaintiff's animals from the premises." [R. 1-2 at 8.] Smith also asserts that Flinkfelt's negligence resulted in the disposition of her animals below market value. [R. 1-2 at 9-10.]

These acts were all discretionary in nature. *See M.W. ex rel. T.W. v. Madison Cnty. Bd. of Educ.*, 262 F. Supp. 2d 737, 746 (E.D. Ky. 2003) ("[t]he Kentucky Supreme Court has recently defined discretionary functions as 'those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment' as opposed to ministerial acts requiring 'obedience to the orders of others' " (internal citation omitted)). Flinkfelt's actions were also consistent with his duties as an employee of Henry County Animal Control and were performed within the scope of his authority. Smith fails to contest either of these conclusions in her response. [R. 7.]

Because Flinkfelt has demonstrated *prima-facie* that his acts were performed within the scope of his discretionary authority, the burden moves to Smith to show by "direct or circumstantial evidence that the discretionary act was not performed in good faith." *Yanero*, 65 S.W.3d at 523. The term "good faith," however, is a bit misleading, because the evidence that must be presented is really of "bad faith." *Rowan County v. Sloas*, 201 S.W.3d 469, 475 (Ky. 2006). Generally, "good faith" is to be presumed absent a showing of "bad faith." *Id.* The Kentucky Supreme Court explained the relationship between qualified official immunity and "bad faith" in the following way:

> [B]ad faith can be predicated on a violation of a [causally related] constitutional, statutory, or other clearly established right which a person in a public employee's position presumptively would have known was afforded to a person in the plaintiff's position ... or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive.

*Id.* (quoting *Yanero,* 65 S.W.3d at 523.) Here, Smith has failed to produce any evidence that shows Flinkfelt violated any clearly established rights. Smith argues that Flinkfelt cannot claim immunity because "he cannot cite a reasonable but mistaken belief of the applicable law in the face of specific instructions from the Henry District Court, for he was on notice that his actions and conduct were violations of a court's directive and unconstitutional." [R. 7 at 4.] First, as has been discussed, the Court lacks jurisdiction to litigate the propriety of the state court decision because of both the *Rooker-Feldman* and *Heck* doctrines. Smith was represented and plead guilty to the charges of animal cruelty. [R. 5-11, *Teri Smith v. Commonwealth of Ky., Guilty Plea*.] Smith appealed in the state court regarding the disposition of the animals and the decision was affirmed. [R. 5-13, *Teri Smith v. Commonwealth of Ky., Order*.] Complaints about Flinkfelt's decision to remove the animals and complaints about how he subsequently sold those animals are more properly directed to

the state appellate courts and cannot be the basis of showing Flinkfelt's bad faith.  Second, with regard to any allegedly inappropriate statements that Flinkfelt made to the media, Smith has failed to direct the Court's attention to any evidence which shows those statements were incorrect or untrue.  Rather, the Complaint suggests that he made comments about Smith's cruelty to animals.  As Smith plead guilty to charges of animal cruelty, it is difficult to see how this could be evidence of bad faith.

The second prong of the *Yanero* test suggests that bad faith may be shown "if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive."  *Id.*  No evidence in the record suggests that Flinkfelt's behavior falls into this category and any unsupported accusations in the complaint are not enough to satisfy Smith's burden in overcoming summary judgment.  Simply put, Smith has provided no evidence of bad faith.

Without having demonstrated the violation of an established right which a person in Flinkfelt's position "presumptively would have known was afforded to a person in the plaintiff's position" or showing that "the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive," Smith cannot overcome the qualified official immunity defense.  *Yanero,* 65 S.W.3d at 523  Consequently, Flinkfelt is shielded by qualified immunity and summary judgment is appropriate as to the state claims brought against Flinkfelt in his individual capacity.

**3**

Smith makes multiple references to the Kentucky Constitution throughout her complaint.  She fails, however, to provide any explanation of how she believes that the Kentucky Constitution was violated.  "[I]ssues adverted to in a perfunctory manner,

unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson*, 125 F.3d at 995-96 (quoting *Citizens Awareness Network, Inc.,* 59 F.3d at 293–94.

Furthermore, because "Section 1983 applies only to deprivations of federal constitutional and statutory rights" and Smith has provided no similar state statute that enables her to make a civil claim for the violation of Kentucky constitutional rights, the claim must be dismissed. *Tallman v. Elizabeth Police Dep't*, 344 F. Supp. 2d 992, 997 (W.D. Ky. 2004), aff'd sub nom. *Tallman v. Elizabethtown Police Dep't*, 167 F. App'x 459 (6th Cir. 2006).

Accordingly, claims under the Kentucky Constitution are dismissed.

## III

Given that none of the claims alleged on behalf of Smith have survived this analysis, granting summary judgment in favor of Defendants against all of Smith's claims is appropriate. Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

(1)      Defendants' Motion for Summary Judgment [R. 5] is **GRANTED**; and

(2)      The Court will enter an appropriate judgment contemporaneously herewith.

This 31st day of March, 2014.



Signed By:

*Gregory F. Van Tatenhove*

**United States District Judge**